# IN THE COURT OF APPEALS OF IOWA

No. 12-1917
Filed July 30, 2014

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ISAAC LEE KIDD,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer (trial on underlying charge) and Bradley J. Harris (trial on habitual offender enhancement), Judges.

Isaac Kidd appeals his judgment and sentence for possession of a firearm as a felon, enhanced as a habitual offender. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brook Jacobsen, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**VAITHESWARAN, J.**

Isaac Kidd appeals his judgment and sentence for possession of a firearm as a felon, enhanced as a habitual offender. He raises several issues, one of which we find dispositive: the admission of prior-bad-acts evidence.

## I.    *Background Facts and Proceedings*

Waterloo police officers received information from a crime suspect that the suspect obtained a gun from Isaac Kidd. Officers executed a search warrant on a home identified by the suspect. The home was leased by a woman with whom Kidd once had a relationship. A search of one of two bedrooms uncovered a semiautomatic handgun.

The State eventually charged Kidd with possession of a firearm as a felon, "having previously been convicted of Carrying Weapons and Possession of a Controlled Substance with Intent to Deliver, contrary to and in violation of Section 724.26 of the Iowa Criminal Code." Kidd denied that he was in fact Kidd and disrupted several pretrial proceedings, resulting in district court admonishments to comport himself or risk exclusion. Kidd did not heed the warnings and was excluded from the proceedings and, later, from the entire trial.[1] Following trial, the jury found Kidd guilty as charged.

On appeal, Kidd contends (1) the district court abused its discretion in admitting evidence that, in his view, "went way beyond proving [his] prior felony convictions"; (2) the record lacks substantial evidence to support the jury's finding that he possessed a firearm; (3) his trial attorney was ineffective in several respects; (4) the district court abused its discretion in declining to instruct the jury

---

[1] Kidd does not challenge his exclusion from trial.

to draw no inference from his silence; and (5) the district court erred in granting a belated motion to amend the trial information to add the habitual offender enhancement. Our disposition of the first issue obviates the need to address the final three issues.

## II.     *Admission of Prior Bad Acts Evidence on Status as a Felon*

The jury was instructed that, to prove possession of a firearm as a felon, the State, in part, would have to establish that, "The defendant was previously convicted of Carrying Weapons or Possession of a Controlled Substance with Intent to Deliver."

Before trial, the prosecutor expressed an intent to prove the prior felonies by introducing "certified copies of a number of documents from [] two separate court files." He identified the following documents: (1) the complaints, (2) face sheets of the trial informations, (3) written pleas of guilty, (4) the judgments, and (5) an application for appointment of counsel and financial affidavit in one of the cases. Kidd's attorney moved "to exclude all of those items other than the judgment." He reasoned as follows:

> All the State is required to prove is that he has a prior conviction. That's the judgment. You don't need the allegations, the State doesn't need the plea agreement, it doesn't need the financial affidavit . . . . [N]ow the State is attempting to have this jury consider all the things in that prior case, not merely the fact of conviction, but the facts and circumstance . . . . [I]t goes way beyond what is necessary and now clearly is unfairly prejudicial to the defendant.

The prosecutor responded by noting the absence of a stipulation concerning Kidd's prior felony. He said the documents were needed because "[t]his defendant has identification information on all of those documents," and "[w]ithout

the defendant being present . . . the State is going to have to rely a little bit more on identification information that's contained in the file." The prosecutor also suggested he needed the facts contained in some of the documents because "[n]ot all carrying weapons convictions disqualify one from possessing a firearm . . . ." The district court preliminarily declined to exclude the documents, reasoning that "identification would be an issue."

Kidd's attorney later renewed his objection to the documents. He said he had no intent to dispute the existence of a prior felony conviction notwithstanding the absence of a formal stipulation and he questioned the prosecutor's motive in seeking "to not just establish the prior felony, but carrying weapons." In his view, the introduction of documents relating to the carrying weapons conviction would impermissibly allow the jury to hear "that this defendant previously carried weapons, therefore, he should be punished this time under propensity for carrying weapons." As for the State's expressed need to identify Kidd, counsel argued the identity issue was "a straw man being erected for the purpose of hewing it down with the idea that the jury in a circumstantial case will make the connection that such evidence of past behavior is evidence that he did it on this occasion." He noted the additional documents did nothing more than "la[y] out in excruciating detail not just the fact of conviction, but the purported reasons," reasons that he argued were entirely irrelevant to establishing his status as a felon. Finally, Kidd's attorney reiterated that, "[a]s [Kidd's] lawyer," he "made no defense that this is the wrong person" and he would not, through any of his questions or argument, challenge Kidd's identity or the existence of a prior felony

offense. He again moved to exclude "[a]nything that goes beyond a judgment that shows he was convicted of a prior felony, a non-gun felony."[2]

The district court found the documents "relevant to the issue of proving the prior offenses, to proving the identity of the individual who's convicted of the prior offenses and "not unfairly prejudicial." The court admitted all the documents listed by the prosecutor.

On appeal, Kidd contends "the district court abused its discretion by admitting the court documents other than the judgment entries from Kidd's previous cases for carrying weapons, theft in the 4th degree and possession with intent to deliver." According to Kidd, "[t]he State only needed to simply establish Kidd had a felony on his record and that he possessed a firearm" and "[t]he amount and type of evidence presented to the jury was prejudicial overkill." Our review of this issue is indeed for an abuse of discretion. *See State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004).

The Iowa Supreme Court has had occasion to address the admissibility of "prior bad acts" evidence on several occasions, more recently, in *State v. Putman*, ___ N.W.2d ___, ___, 2014 WL 2619405 (Iowa 2014). In *Putman*, the court summarized the rule as follows:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Iowa R. Evid. 5.404(b). The evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The rule "exclude[s] evidence that serves no purpose except to show the

---

[2] On appeal, the defense does not go so far as to seek redaction of the carrying weapons judgment, apparently conceding that the single judgment entry for three crimes, including carrying weapons, was admissible.

> defendant is a bad person, from which the jury is likely to infer he or she committed the crime in question." *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001).

2014 WL 2619405, at *5. The court reiterated the three-step analysis courts must employ to decide whether to admit prior-bad-acts evidence: (1) whether "the evidence is relevant to a legitimate, disputed factual issue," (2) whether there is "clear proof the individual against whom the evidence is offered committed the bad act or crime," and (3) whether the evidence's "probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.* at *5-6.

On the relevancy question, we need go no farther than the marshalling instruction to conclude that some evidence of a prior felony conviction was necessary to prove the State's case. Because Kidd refused to concede anything, including his name, the State was obligated to prove his status as a felon and could legitimately offer certified copies of the judgments, as Kidd's appellate attorney concedes. *See id.* at *5.

With the judgments in evidence, the remaining documents proffered by the State were only marginally relevant to a legitimate disputed fact issue. The prosecutor's purported reason for offering the documents was to confirm Kidd's identity. However, identifying information, including Kidd's social security number and birth date, was included in the judgments. The balance of the information contained in the additional documents was largely irrelevant to Kidd's status as a felon.

The complaints and trial informations contained unproven charges that, as Kidd's attorney explained, did not "make the existence of any fact more or less

true that's of significance to any issue that's in this trial." *See State v. Williams*, 315 N.W.2d 45, 54 (Iowa 1982) (affirming the exclusion of evidence of amendment and proposed amendment of trial information after concluding the evidence was not "material to determining defendant's guilt or innocence of the charge"). Additionally, the "carrying weapons" complaint in the first case revealed details about the gun, Kidd's explanation of how he obtained it, and an officer's determination of its source—unproven allegations that had no bearing on whether Kidd was a felon. Similarly, the complaint in the second case provided details of a drug-related charge and identified a weapon that was found on the premises. Notably, the weapons enhancement in the second case was ultimately dismissed.

The application for appointment of counsel described Kidd as "fully indigent" and revealed details about his support system that were immaterial to Kidd's status as a felon. As for the plea agreements, both revealed the State's agreement not to file additional charges which, again, was not material to his status as a felon.

We conclude all the documents introduced to establish Kidd's status as a felon except the certified judgments were of limited probative value in establishing Kidd's identity.

This brings us to the "clear proof requirement." There is no question that the certified judgments of the prior convictions constituted "clear proof" that Kidd was a felon. As noted, those judgments, entered in a single order, identified Kidd by his birth date and social security number. The social security number matched the number found in Kidd's wallet in the bedroom that was searched.

The remaining documents contained the same identifying information and, to that extent, amounted to clear proof of his identity although, they were duplicative of the information in the judgments.

We are left with the question of whether the contested evidence's "probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Putman*, 2014 WL 2619405, at *6. Kidd's trial attorney eloquently articulated the concerns with the non-judgment evidence the State proffered to establish Kidd's status as a felon. First, he pointed out that the complaints, trial informations, guilty pleas, and financial affidavit were not needed to establish Kidd was a felon. *See id.* (noting the "need for the evidence" is a consideration in evaluating this factor). Second, he explained that, contrary to the State's assertion, the judgments did not contain gaps the State was required to fill with other documents. But, even if there were gaps, counsel made a professional statement that he had no intention of disputing Kidd's status as a felon notwithstanding the absence of a formal stipulation.[3] *See Williams*, 315 N.W.2d at 52-53 ("The term 'professional statement' . . . means a statement of fact presented to the court by an attorney in connection with a matter then before such court, verified in effect by the oath of such attorney, and designed or calculated to aid or influence the court in the determination of a given cause or

---

[3] In *State v. Cole*, No. 04-0811, 2006 WL 623216, at *4 (Iowa Ct. App. Mar. 15, 2005), this court held that the district court should not have admitted evidence relating to a defendant's prior convictions after his attorney made an on-the-record offer to stipulate to the convictions. In this case, counsel did not formally offer to stipulate, given his client's unwillingness to even acknowledge his name. However, counsel offered a reasonable equivalent, which was his representation that he would not contest the element. We see no material distinction. *See Old Chief v. United States*, 519 U.S. 172, 174, 190 (1997) (holding court abused its discretion in admitting the full record of a prior judgment in the face of an offer to stipulate to the prior conviction and stating "the fact of the qualifying conviction is alone what matters").

issue."). Finally, he explained the additional documents would prompt the jury to reach a decision on an improper basis. *See Putman*, 2014 WL 2619405, at *11 ("Evidence is unfairly prejudicial if it has an undue tendency to suggest decisions on an improper basis commonly, though not necessarily an emotional one." (internal quotation marks omitted)).

We agree with defense counsel's characterization of the challenged evidence. As noted, the complaints and trial informations contained details about past crimes similar to the crime with which Kidd was presently charged. Needless to say, the details placed Kidd in a bad light. *See id.* at *8 (stating rule that "generally similar prior-bad-acts evidence" is inadmissible); *State v. Liggins*, 524 N.W.2d 181, 188 (Iowa 1994) (finding evidence that Liggins was a supplier of cocaine appealed to the jury's instinct to punish drug dealers). The application for appointment of counsel and the reference to Kidd as being "fully indigent" could only be viewed as pejorative in this context. *See State v. Wilson*, 599 N.W.2d 481, 487 (Iowa 1999) ("Evidence a defendant is indigent and represented by court-appointed counsel may be more prejudicial than probative if used merely to portray the defendant as an indigent."); *State v. Sallis*, 574 N.W.2d 15, 17 (Iowa 1998) (stating in a proper case a defendant's affidavit of financial condition might prove crucial to establishing elements of offense charged but the prosecutor's use to prove drug-dealing was too attenuated and cautioning prosecutors to "refrain from abusing the strategy lest it prejudicially impact defendants' exercise of their Sixth Amendment right to counsel"); *State v. Roghair*, 353 N.W.2d 433, 435 (Iowa Ct. App. 1984) (noting a financial affidavit "prejudices the jury against the defendant because he used public funds for his

defense"). As for the plea agreements, they were prejudicial on their face to the extent they implied Kidd committed other uncharged crimes.

We conclude any probative value these documents might have had was substantially outweighed by the danger of unfair prejudice.

In reaching this conclusion, we have considered the fact that the district court gave the jury a cautionary instruction, at least with respect to the exhibits in one of the cases.[4] The court advised the jurors they were only to consider the exhibits "for the purpose of establishing whether or not there was a prior conviction and whether or not this was the individual who had that prior conviction." In our view, that instruction did not "alleviate the danger of unfair prejudice." *See State v. Elliott*, 806 N.W.2d 660, 674 n.4 (Iowa 2011). As Kidd's attorney stated, "I think we are overly optimistic in thinking that a jury can just disregard these prior bad acts and compartmentalize and only use them for a limited purpose even with a limiting instruction." That was particularly true where some of the additional exhibits referred to details of similar crimes.

We acknowledge the *Putman* court's reaffirmation of the principle that cautionary instructions are only deemed insufficient in extreme cases. 2014 WL 2619405, at *12. We view the proffer of voluminous documents to prove the simple fact of Kidd's identity and felon status as falling within this "extreme case" exception. The documents did not make "brief, inadvertent reference to prior criminal activity." *State v. Belieu*, 288 N.W.2d 895, 901 (Iowa 1980). The documents contained "numerous references to other alleged crimes which

---

[4] Defense counsel requested a cautionary instruction not be given following the offer of the second round of exhibits.

remained part of the record." *Id.* Given the extensive non-probative content of the documents, the cautionary instruction did not suffice to remove the prejudice to Kidd.

Because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, all documents admitted to establish Kidd's status as a felon except the certified copies of the judgments should have been excluded. *See State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). We reverse and remand for a new trial. *Id.* at 31.

### III.     *Sufficiency of the Evidence*

Kidd contends there was insufficient evidence to support a finding he possessed a firearm. We must address this claim to determine whether retrial is permissible or whether jeopardy attached, requiring entry of a judgment of acquittal. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003). The jury's verdict is binding on appeal if there is substantial evidence in the record to sustain it. *State v. Hennings*, 791 N.W.2d 828, 832-33 (Iowa 2010).

The jury was instructed, in part, that the State would have to prove the following element: "On or about July 31, 2009, through August 3, 2009, the defendant knowingly possessed or had under his dominion and control a firearm." *See* Iowa Code § 724.26(1) (2009). The jury was further instructed:

> The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may have sole or joint possession.
> A person who has direct physical control over a thing on his person is in actual possession of it.
> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it. . . .

Whenever the word "possession" has been used in these instructions, it includes actual as well as constructive possession and sole as well as joint possession.

It is undisputed that Kidd had possession, if at all, on a constructive rather than actual basis. *See State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) ("The State may show the defendant had either 'actual possession' or 'constructive possession'"). Because he was not the only person who lived in the home that was searched, we must determine whether there are any circumstances linking him to the firearm. *See id.* at 443.

A reasonable juror could have found the following facts connecting Kidd to the firearm. The gun was discovered on the floor between a nightstand and a bed. On the second shelf of the nightstand were documents bearing Kidd's name. On the same nightstand was a Bible also bearing Kidd's name, as well as a baseball cap. A DNA sample taken from the cap was consistent with the known DNA profile of Kidd. On a crate in the bedroom was a wallet containing an Iowa ID and social security card belonging to Kidd. The ID card listed the searched home as Kidd's address. The closet in the bedroom contained men's clothing and no women's clothing.

These facts amount to substantial evidence in support of a finding that Kidd constructively possessed the gun found between the bed and nightstand. Accordingly, Kidd was not entitled to judgment of acquittal on the possession charge.

## IV.    *Ineffective Assistance*

Kidd contends his trial attorney was ineffective in failing to (a) file a motion to suppress evidence obtained during the search of the home, (b) object to

evidence concerning a filed-off serial number on the gun, and (c) object to statements that he was in custody. We find it unnecessary to address these issues in light of our remand for a new trial.

*V.* ***Disposition***

There is substantial evidence to support the jury's finding of guilt. Accordingly, judgment of acquittal is not warranted. We find an abuse of discretion in the admission of prior-bad-acts evidence, which requires reversal and a remand for a new trial. We find it unnecessary to address the remaining issues raised on appeal.

**REVERSED AND REMANDED.**